# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL D. JACKSON** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 1:06 CV 00001- MHT |
| | ) |
| **MGA, INC. d/b/a MOVIE** | ) |
| **GALLERY U.S., LLC** | ) |
| | ) |
| **Defendant.** | ) |

## AFFIDAVIT OF HEATH CROOM

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF HOUSTON** | ) |

1. My name is Heath Croom. I am over the age of twenty-one (21) years and I have personal knowledge of the matters contained herein. I swear under the penalty of perjury that the matters contained herein are true and correct.

2. I am the Director of Quality Assurance at Movie Gallery US, LLC.

3. In May 2004, Jackson applied for a promotion to Quality Assurance Auditor ("QAA"), a full-time, salaried position in Movie Gallery's corporate office in Dothan, Alabama.

4. I interviewed Jackson and recommended to Phillip Kitchens ("Kitchens"), Vice President of Loss Prevention, Collections and Administration, that Jackson receive the promotion.

5. Kitchens approved the promotion, and Jackson began working as a QAA on May 24, 2004.

6.  In this position, Jackson was required to travel to stores throughout the United States to evaluate quality assurance ("QA") issues and to submit QA reports for review by me. Jackson had no supervisory authority in this position. This position did not require knowledge of the gaming industry, nor did it involve duties pertaining to the game industry.

7.  Jackson received a substantial raise in his position as QAA and became eligible for Movie Gallery's bonus structure at the time of the promotion.

8.  On August 16, 2004, I issued Jackson a Verbal Warning ("VW") regarding audit planning, audit tools and audit reporting.

9.  Specifically, I counseled Jackson regarding numerous deficiencies in the QAA reports, including, *inter alia,* inaccurate calculations and figures, incorrect grammar and spelling, tardiness, and use of the wrong template for re-audit summaries.

10. As a result of Jackson's deficiencies, I was forced to make extensive revisions to Jackson's audit summaries before distributing them within the company.

11. On November 8, 2004, I issued Jackson a Written Warning ("WW") for the same issues that had been raised in the previous VW.

12. Jackson's audits continued to be replete with factual and grammatical errors.

13. Despite specific instructions to the contrary, Jackson also continued to use the wrong template for re-audit summaries, requiring me to spend an inordinate amount of time correcting Jackson's reports.

14. In this warning, I made it clear that "repeated errors cannot be tolerated or allowed to continue from week to week" and that "much improvement [was] expected."

15. Jackson signed the warning without comment.

16. Because of the extensive travel required, Jackson, like most Movie Gallery employees who travel, was issued a corporate American Express card.

17. All employees who are issued such cards are told in writing that it is his or her responsibility to submit expense reports in a timely manner and to promptly pay the balance in full after receiving reimbursement.

18. At that time, employees were reimbursed every Friday for expense reports submitted before Wednesday at noon.

19. Assuming the reimbursements were submitted in a timely manner, an employee would be reimbursed within ten days after the expense was incurred. .

20. On January 3, 2005, Jackson was scheduled to fly to Virginia to conduct a store audit. Jackson telephoned me from the Dothan airport to tell me he could not purchase a ticket because his card had been declined.

21. I researched his credit card history and learned that Jackson already had been reimbursed for part of the balance on his American Express account but had not paid the account with the reimbursement. I also learned that Jackson was habitually late in paying his corporate American Express account.

22. I instructed Jackson to drive to a different district in Georgia to conduct an audit until the matter could be resolved.

23. Subsequently, on January 14, 2005, I issued Jackson a Final Written Warning ("FWW") regarding his expense reimbursements and failure to pay his corporate American Express card on time. Jackson signed the FWW without comment.

24. On January 25, 2005, I completed a performance review on Jackson,

giving Jackson a 2.6 out of a potential 5. This score placed Jackson in the "Needs Improvement" range. Areas cited on Jackson's review included Jackson's deficient audit reports and his failure to pay off his American Express account in a timely manner. I further noted that Jackson's progress in these areas had been and would continue to be monitored. Jackson acknowledged receipt of the review via email without comment.

FURTHER THE AFFIANT SAYETH NOT.

                                                      _____
                                                      HEATH CROOM

Sworn to and subscribed before me
On this the 1st day of August 2006

[NOTARY SEAL]
_____
Notary Public
My Commission Expires: 7/30/09